NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

|  |  |  |
|---|---|---|
| LOUIS VUITTON MALLETIER, S.A., | ) | |
| *a foreign business entity*, | ) | |
|  | ) | |
| Plaintiff, | ) | Hon. Garrett E. Brown, Jr. |
|  | ) | |
| v. | ) | Civil No. 07-2620 |
|  | ) | |
| JOSEPH MOSSERI, *an individual d/b/a* | ) | **MEMORANDUM OPINION** |
| LABOLSO.COM, *d/b/a* | ) | |
| FASHIONETAILER.COM, *agent of* | ) | |
| POUCHETTE.COM, *a/k/a* JOSEPH MOSS, | ) | |
| *d/b/a* SACBELLE.COM, *d/b/a* LESHANTA.COM, | ) | |
| and 613 CAMERA CORPORATION, *a New York* | ) | |
| *Corporation d/b/a* POUCHETTE.COM, *d/b/a* | ) | |
| LABOLSO.COM, *d/b/a* | ) | |
| FASHIONETAILER.COM, *d/b/a* | ) | |
| SACBELLE.COM, *d/b/a* LESHANTA.COM, | ) | |
| and MODENA APPAREL CORPORATION | ) | |
| *a New York Corporation*, *d/b/a* | ) | |
| LABOLSO.COM, *d/b/a* | ) | |
| FASHIONETAILER.COM, *d/b/a* | ) | |
| POUCHETTE.COM, *d/b/a* SACBELLE.COM, | ) | |
| *d/b/a* LESHANTA.COM, and ESTHER SHASHO, | ) | |
| *a/k/a* ESTHER SHASHA, and BILIBI, INC., and | ) | |
| JOHN DOES 1-10, | ) | |
|  | ) | |
| Defendants. | ) | |
_____ )

Gabriel H. Halpern, Esq.
PINILIS HALPERN, LLP
160 Morris Street
Morristown, New Jersey 07960
*Attorneys for Plaintiff*

**BROWN**, Chief Judge:

This matter comes before the Court on Plaintiff Louis Vuitton Malletier, S.A.'s ("Louis Vuitton") motion for default judgment (Doc. No. 23) as against Defendant 613 Camera Corp., a New York Corporation doing business as Leshanta.com, Fashionetailer.com, Sacbelle.com, Balenci.com, Labolso.com, Pouchette.com, and Yuella.com ("Defaulting Defendant").[1]  For the following reasons, Louis Vuitton's motion will be granted.

### *Background*

Louis Vuitton is a foreign manufacturer and distributer of luxury handbags, shoes, hats, umbrellas, and belts whose goods bear federally registered trademarks.  According to Louis Vuitton, Defaulting Defendant, through its various websites, has sold counterfeit Louis Vuitton products in at least six varieties—handbags, wallets, key cases, traveling bags, pocketbooks, and belts—that infringe upon 27 of Louis Vuitton's registered trademarks.[2]  Louis Vuitton contends

---

[1]This matter was reassigned to the undersigned by Order of August 10, 2009.

[2]The infringed registered trademarks, according to Louis Vuitton, consist of the following:

| Mark | Registration Number |
|---|---|
| VL | 0,297,594 |
| LV | 1,519,828 |
| LV | 2,399,161 |
| YELLOW DESIGN | 1,653,663 |
| LV | 1,655,564 |
| DAISY DESIGN | 2,177,828 |
| FLOWER DESIGN | 2,773,107 |

that it never  authorized Defaulting Defendant to use its marks and that Defaulting Defendant

knew that it did not have permission to employ Louis Vuitton's marks, but that it nevertheless

advertised and sold goods bearing Louis Vuitton's marks so that consumers would mistake the

counterfeit goods for genuine products.  (*See* Compl. at ¶¶ 2, 13, 15, 21–28.)

| | |
|---|---|
| LOUIS VUITTON | 1,045,932 |
| LOUIS VUITTON | 1,990,760 |
| LV | 1,643,625 |
| DAISY CIRCLE DESIGN | 2,181,753 |
| FLOWER PATTERN | 3,107,072 |
| RECTANGLE DESIGN | 1,653,662 |
| LOCK DESIGN | 1,650,162 |
| PLAIN RECTANGLE | 1,615,681 |
| YELLOW/BROWN FLOWER | 1,653,663 |
| FLOWER IN SQUARE | 1,841,850 |
| LV BELT | 3,066,114 |
| LOCK DESIGN | 2,828,919 |
| SQUARE DESIGN | 2,378,388 |
| CHECKER PATTERN | 2,421,618 |
| SQUARE DESIGN | 2,263,903 |
| YELLOW SQUARE | 2,075,141 |
| GOLD RECTANGLE | 2,071,273 |
| BLUE SQUARE | 1,931,144 |
| CIRCLE DESIGN | 0,286,345 |
| SPEEDY | 3,189,599 |

(*See* Compl. ¶ 13; Livadkin Decl. ¶ 4 & Ex. C.)

3

On June 5, 2007, Louis Vuitton filed a five-count Complaint presenting claims of trademark infringement, false designation of origin, trademark dilution, and unfair competition.[3] Plaintiff's claims arise under sections 32 and 43(a) and (c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and (c), as well as state common law.  Defaulting Defendant was properly served with the Complaint, but failed to file a response within the time allowed under Federal Rule of Civil Procedure 12(a)(1)(A).  On February 3, 2009, the Clerk of the Court entered default against this Defendant pursuant to Federal Rule of Civil Procedure 55(a).  Louis Vuitton now moves for default judgment against Defaulting Defendant, seeking statutory damages under the Lanham Act, a permanent injunction against Defaulting Defendant, transfer of the internet domain name Balenci.com to Louis Vuitton, and an award of reasonable attorneys' fees, costs, and investigative fees.

## *Analysis*

Plaintiff has filed claims alleging violations of federal law pursuant to the Lanham Act, 15 U.S.C. §§ 1051–1127.  This Court exercises jurisdiction over Plaintiff's Lanham Act claims pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because (1) this Court has subject-matter jurisdiction over the Lanham Act claims, (2) the state law claim and the federal claims derive from a "common nucleus of operative fact," and (3) the claims are such that they would normally "be expected to

---

[3]The Court notes that Plaintiff amended the Complaint on February 23, 2009, ostensibly to add Defendants and modify its damages request.  The factual allegations of the First Amended Complaint do not appear to differ in a material way from the allegations contained in the original Complaint.  However, because the Clerk of the Court entered default against Defaulting Defendant prior to the filing of the First Amended Complaint, the Court will consider the factual allegations contained in the original Complaint for purposes of this motion.

be tried in one judicial proceeding." *MCI Telecomms. Corp v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995).

A court may grant default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). On a motion for default judgment, the Court must accept as true all allegations contained in the Complaint, except allegations concerning the amount of damages. *Comdyne I, Inc.* v. *Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

**I.      Liability**

Accepting the allegations of the Complaint as true and admitted by Defaulting Defendant, as this Court must, Louis Vuitton's allegations establish violations of sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).   The record reflects that Plaintiff has valid and legally protectable marks, and, having viewed the counterfeit marks, most of which appear to be exact duplicates of Louis Vuitton marks and products (*see generally* Livadkin Decl. Exs. F–R), this Court is satisfied that Defaulting Defendant's use of the marks is likely to cause consumer confusion.  *See Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-2662, 2009 WL 2147843, at *2 (D.N.J. July 15, 2009) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)).  By virtue of these Lanham Act violations, Louis Vuitton has also established its common law claims for trademark infringement and unfair competition.  *See, e.g.*, *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994) (citations omitted); *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 386 (D.N.J. 2002) (citing *Apollo Distrib. Co. v. Jerry Kurtz Carpet Co.*, 696 F. Supp. 140, 143 (D.N.J. 1988)).  The record also reflects that Louis Vuitton has well-established "famous marks," that Defaulting Defendant is using these marks without permission in interstate commerce, and that

5

Defaulting Defendant's unauthorized use of Plaintiff's marks diminishes the marks' ability to identify Plaintiff's goods.  (*See* Compl. ¶¶ 14–28, 48–51.)  Accordingly, Louis Vuitton has also established a claim for trademark dilution under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).  *See Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 581–82 (E.D. Pa. 2002).

Defaulting Defendant has presented no meritorious defenses, and Louis Vuitton will be prejudiced in the absence of default judgment.  *See Chanel, Inc. v.  Gordashevsky*, 558 F. Supp. 2d 532, 538 (D.N.J. 2008) (applying factors enumerated in *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 73 (3d Cir. 1987)).  Accordingly, this Court will grant default judgment against Defaulting Defendant on Plaintiff's Lanham Act and common law claims of trademark infringement, false designation of origin, trademark dilution, and unfair competition.

## II.    Statutory Damages

The Lanham Act provides for the recovery of statutory damages if it is impossible to calculate lost profits. *See* 15 U.S.C. § 1117(c).  Because Defaulting Defendant failed to answer the Complaint, Louis Vuitton is unable to calculate its lost profits.  The Lanham Act authorizes statutory damages between $500 and $100,000 per counterfeit mark per type of good, and up to $1 million per counterfeit mark per type of good if the offending party's unauthorized use of the trademark was willful.  15 U.S.C. § 1117(c) (1998).[4]  This Court has considerable discretion in awarding statutory damages for trademark infringement, and a number of courts in this Circuit

---

[4]Effective October 13, 2008, Congress amended the Lanham Act to double the statutory damages range to $1,000–$200,000 per counterfeit mark per type of goods, and up to $2 million per counterfeit mark per type of goods where the infringement is willful.  Louis Vuitton does not contend that the amended statutory damages provision applies to this case, which commenced in 2007.

have weighed the following considerations in determining the proper amount: "(1) the expenses

saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the

[trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's

conduct was innocent or willful; (6) whether [the] defendant has cooperated in providing

particular records from which to assess the value of the infringing material produced; and (7) the

potential for discouraging the defendant." *Platypus Wear*, 2009 WL 2147843, at \*6–7 (citation

omitted) (adopting factors from copyright law); *see also Louis Vuitton Malletier & Oakley, Inc.*,

211 F. Supp. 2d at 583–84 (weighing similar factors).

Here, Louis Vuitton requests $4,072,892.22 in statutory damages for the 27 trademarks

and six types of goods counterfeited.  Louis Vuitton based this request on the average value of

inventory listed on Defaulting Defendant's six websites—$25,141.31—multiplied by the number

of trademarks and types of goods counterfeited.  (Pl.'s Mot. at 21.[5])  After careful consideration

of the above factors, the Court is persuaded that the amount of statutory damages requested by

Louis Vuitton is warranted by the circumstances of Defaulting Defendant's misconduct.

Defaulting Defendant has not cooperated in this litigation, and, although this measurement of

statutory damages, being less than $100,000 per counterfeit mark per type of good, would not

require a showing of willfulness, it is clear that Defaulting Defendant did act willfully in

advertising and selling counterfeit products as genuine Louis Vuitton products through its

websites.  *See SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999)

("[W]illful infringement [involves] 'an aura of indifference to plaintiff's [trademark] rights' or a

---

[5]The Court notes that Plaintiff's motion brief requests $4,089,792.22, but Plaintiff's proposed formula results in a figure of $4,072,892.22.  The Court understands Plaintiff to submit the latter sum as its request for statutory damages.

'deliberate[ ] and unnecessar[y] duplicating [of a] plaintiff's mark . . . in a way that was

calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured.'"

(quoting *W.E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 662 (2d Cir.1970))), *superseded by*

*statute on other grounds as recognized by Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 171 (3d

Cir. 2005); *see also Chanel*, 558 F. Supp. 2d at 538 ("The fact that Defendant sold goods using

marks that were identical to such strong and established marks conclusively demonstrates his

desire and purpose to trade upon Chanel's goodwill.").  Further, the fact that Defaulting

Defendant operated its counterfeit goods-trafficking enterprise on the Internet exponentially

increased the damage done, both to Louis Vuitton's reputation and to the public interest in fair

markets.  *See, e.g.*, *N.V.E., Inc. v. Day*, No. 07-4283, 2009 WL 2526744, at *4 (D.N.J. Aug. 18,

2009); *Louis Vuitton*, 211 F. Supp. 2d at 584 (expressing concern that advertisements of

counterfeit goods would be accessible to more than 143 million Internet consumers).  The Court

also notes that this Defendant has counterfeited other brands of luxury goods, as evidenced by the

default judgment for trademark infringement entered by another court in this District.  *Chanel,*

*Inc. v. Joseph Mosseri*, No. 07-2619 (D.N.J. 2008) (order of May 20, 2008) (entering default

judgment against 613 Camera Corp.).

    Other Courts in this District have awarded larger sums for statutory damages in similar

trademark infringement cases involving the counterfeiting of comparable luxury goods.  *See, e.g.*,

*Chanel, Inc. v. Joseph Mosseri*, No. 07-2619 (order of May 20, 2008) (awarding $180,000 per

each of the seven infringed marks and three types of goods, for total statutory damages in the

amount of $3,780,000); *Chanel, Inc. v. Craddock*, No. 05-1593 (D.N.J. 2006) (order of April 27,

2006) (awarding $100,000 per each of the nine infringed marks and nine types of goods, for total

statutory damages in the amount of $8,100,000).  This Court is satisfied that Louis Vuitton's

requested statutory damages will sufficiently compensate Plaintiff and deter Defaulting

Defendant and others from committing similar acts of trademark infringement.  Therefore, the

Court will award $25,141.31 per each of the 27 counterfeit marks and six types of goods, totaling

$4,072,892.22 in statutory damages.

### III.      Attorneys' Fees, Costs, and Investigative Fees

Louis Vuitton requests attorneys' fees, costs, and investigative fees pursuant to the

Lanham Act.  With regard to attorneys' fees and costs, the Lanham Act permits an award of costs

whenever a plaintiff establishes trademark infringement but limits attorneys' fees to a prevailing

party in "exceptional cases."  15 U.S.C. § 1117(a).  Louis Vuitton, as the prevailing party, bears

the burden of proving that this case qualifies as an exceptional case by clear and convincing

evidence.  *See, e.g.*, *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996); *Reed

Publ'g (Nederland) B.V. v. Execulink, Inc.*, No. 98-1049, 1998 WL 812246, at *3 (D.N.J. Nov.

17, 1998).  Willful and deliberate trademark infringement constitutes an exceptional case for

purposes of attorneys' fees.  *See, e.g.*, *SecuraComm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d

273, 280–82 (3d Cir. 2000); *Chanel*, 558 F. Supp. 2d at 539.  The Lanham Act also permits an

award of investigative fees incurred by an investigator acting under the supervision of the party's

attorney.  *Chanel*, 558 F. Supp. 2d at 539 (citing *Louis Vuitton S.A. v. Downtown Luggage Ctr.*,

706 F. Supp. 839, 842 (S.D. Fla. 1988); Joint Statement on Trademark Counterfeiting

Legislation, 130 Cong. Rec. H12083 (1984)).

This Court is satisfied that Louis Vuitton has presented clear and convincing evidence

that Defaulting Defendant willfully infringed Louis Vuitton's trademarks.  As noted above, Louis

Vuitton has submitted copies of product listings from Defaulting Defendant's websites that advertised and sold the counterfeit Louis Vuitton products.  (*See generally* Livadkin Decl. Exs. F–R.)  This evidence persuades the Court that Defaulting Defendant acted willfully, because it deliberately attempted to deceive consumers so that it could profit from selling counterfeit versions of Louis Vuitton's products.  Meanwhile, the Court is satisfied that the investigative fees incurred by Plaintiff were reasonably related to the detection of Defaulting Defendant's trademark infringement.  (*See* Livadkin Decl. ¶¶ 10–14, 16–18, 20–22, 24–26, 30–31; *see generally* Holmes Decl., Voyles Decl.)  Thus, this Court will award reasonable attorneys' fees, costs, and investigative fees to Louis Vuitton.

Plaintiff requests $14,595 in attorneys' fees for 41.7 hours of work billed by its attorneys. The supporting declarations of Plaintiff's attorneys indicate that Gabriel Halpern billed 13.7 hours and Stephen Gaffigan billed 28 hours on this matter, with each attorney charging $350 per hour.  (Gaffigan Decl. ¶ 10; Halpern Decl. ¶ 6.)  The Court has reviewed the itemized statements of hours billed submitted by Plaintiff's attorneys, and the Court finds these fees to be reasonable. (Gaffigan Decl. Ex. 1; Halpern Decl. Ex. A.)  Plaintiff also requests costs in the amount of $500 (Gaffigan Decl. ¶¶ 14–17 & Ex. 2 (filing fee and process-serving fee)) and investigative fees in the amount of $3,938 (Holmes Decl. ¶ 32; Voyles Decl. ¶ 14.)  The Court finds these fees reasonable and will award them.

## IV.   Injunctive Relief

Finally, Louis Vuitton requests that this Court permanently enjoin Defaulting Defendant from committing future acts of infringement against their trademarks.  The Lanham Act empowers this Court to grant injunctive and other equitable relief to prevent further violations of

10

Louis Vuitton's trademark rights.  15 U.S.C § 1116(a).  The Supreme Court held in *eBay, Inc. v. MercExchange, LLC* that "well-established principles of equity" dictate that any plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." 547 U.S. 388, 391 (2006) (citations omitted).  Courts in this District have applied similar factors in considering permanent injunctions in trademark cases.  For example, in *Chanel, Inc. v. Gordashevsky*, the court stated:

> Generally, to obtain a permanent injunction, a plaintiff must show that (1) the Court's exercise of equity jurisdiction is proper, (2) the [p]laintiff succeeded on the merits, and (3) the balance of equities tips in favor of injunctive relief. The first factor contains three sub-parts which require the plaintiff to show (1) plaintiff has no adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable defenses exist.

558 F. Supp. 2d at 539 (citations omitted); *see also Microsoft Corp. v. Gonzales*, No. 06-4331, 2007 WL 2066363, at *7 (D.N.J. July 13, 2007) (applying same standard in a copyright and trademark infringement case).

Louis Vuitton has shown all of these elements.  Equity jurisdiction is proper under the Lanham Act, and Louis Vuitton has succeeded on the merits.  Louis Vuitton has suffered irreparable injury from Defaulting Defendant's advertisement and sale of counterfeit products to the limitless consumer base of the Internet.  These acts of infringement have caused a strong likelihood of consumer confusion between the counterfeit Louis Vuitton products and their legitimate counterparts, and likely will continue to cause consumer confusion about these

11

products in the future.  *See, e.g.*, *N.V.E.*, 2009 WL 2526744, at *6–7 (citing *Microsoft Corp. v.*

*McGee*, 490 F. Supp. 2d 874, 882–83 (S.D. Ohio 2007)).  Further, monetary relief alone will not

adequately compensate Louis Vuitton for the reputational injury inflicted or deter future

trademark infringement by Defaulting Defendant.  *See Gonzales*, 2007 WL 2066363, at *7.

Defaulting Defendant has not presented any equitable defenses, and the balance of equities weigh

in favor of injunctive relief.  Defaulting Defendant deliberately infringed Louis Vuitton's

trademarks by advertising and selling counterfeit products bearing duplicates of those marks on

the Internet.  This misconduct harms Plaintiff's business reputation and impairs the public

interest in preventing consumer confusion and deception in the marketplace.  Furthermore, the

issuance of an injunction would cause Defaulting Defendant no undue hardship, because "an

injunction will merely require Defendant to comply with the . . . Lanham Act."  *McGee*, 490 F.

Supp. 2d at 883.

Based on these equitable considerations, this Court will grant Louis Vuitton the

injunctive relief it seeks by permanently enjoining Defaulting Defendant from imitating, copying,

counterfeiting, or making any other infringing use of Louis Vuitton's registered trademarks.  In

addition, Louis Vuitton requests that this Court order the transfer of the Internet domain name

Balenci.com in order to effectuate the purpose of the aforementioned injunctive relief.  In the

collateral trademark infringement suit against this Defendant mentioned above, The Honorable

Stanley R. Chesler, District Judge, granted control of the following websites employed by

Defaulting Defendant to plaintiff Chanel, Inc.: Leshanta.com, Pouchette.com, Sacbelle.com,

Labolso.com, Yuella.com, and Fashionetailer.com.  *See Chanel Inc. v. Joseph Mosseri*, No. 07-

2619 (order of May 20, 2008).  The Court finds Plaintiff's request reasonable and will order the

12

transfer of the Internet domain name Balenci.com.

### *Conclusion*

For the foregoing reasons, this Court will grant Plaintiff's motion for default judgment and award $4,072,892.22 in statutory damages, $14,595 in attorneys' fees, $3,938 in investigative fees, and $500 in costs under the Lanham Act.  This Court will also permanently enjoin Defaulting Defendant from infringing Plaintiff's registered trademarks and will grant Louis Vuitton the option to control the Internet domain name Balenci.com.  An appropriate form of order accompanies this Memorandum Opinion.


Dated: October 28, 2009

                            /s/ Garrett E. Brown, Jr.
                          GARRETT E. BROWN, JR., U.S.D.J.